UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MOHAMMED MOSA YAAKOOBI | : | |
| (a/k/a Mohammed Mosa Yakoobi, | : | |
| Mohammed Yacoub), | : | |
| *et al.*, | : | |
| | : | |
| *Petitioners,* | : | |
| v. | : | |
| | : | |
| GEORGE W. BUSH, | : | Civil Action No. 06-cv-01683-RWR |
| *et al.* | : | |
| | : | |
| *Respondents.* | : | |

### PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO DISMISS

Petitioner Mohammed Mosa Yaakoobi, acting on his own behalf and through his Next Friend, Abdul Majid, and by and through his undersigned counsel, hereby opposes the respondents' Motion to Dismiss, filed on April 19, 2007. Petitioners filed a Motion to Stay and Abey on April 20, 2007 requesting this Court to enter a "stay and abey" order while the issue of jurisdiction is litigated and while petitioner's action under the DTA is processed in the appellate court. As noted in the petitioners' Motion to Stay and Abey, the DTA litigation will provide the petitioner and this Court requisite information regarding disputed jurisdictional questions pending before this Court, and may result in a remand to this Court based on the military's lack of initial jurisdiction over the petitioner, or lead to a limited remand to this Court for resolution of controverted facts, or render moot some or all of the claims pending before this Court.

**I.   It Would Be Premature For This Court to Dismiss Petitioners' Habeas Actions for Lack of Jurisdiction.**

Respondents argue that dismissal of this habeas action is consistent with the established law of this Circuit (*Boumediene I*) as well as the clear intent of Congress as expressed within the Military Commission Act (the "MCA").[1]  This argument fails to recognize that the holding in *Boumediene I* is neither final nor binding upon this court. Moreover, the constitutionality of the statute is still being litigated.  As a matter of necessary predicate, the Supreme Court has openly invited habeas counsel to exhaust all available remedies in order to repetition the Court for review.  Dismissal at this time would be premature.  Until the constitutionality of the MCA has been resolved, it is more appropriate to maintain the stay of these habeas actions.

The Court of Appeals has not issued its mandate in *Boumediene I*.  The *Boumediene* petitioners have asked the court to stay the issuance of its mandate pending the completion of DTA proceedings and the filing of a renewed petition for certiorari to review the court's jurisdictional ruling in *Boumediene I*.  The court has not yet acted on the motion.  This case is presently before the D.C. Circuit on an interlocutory appeal (No. 05-5398) and the government has moved to dismiss in that case.

Moreover, this Court is not obligated to rotely apply the Court of Appeals' conclusions regarding the jurisdictional implications of the MCA.  It has long been held that courts have jurisdiction to determine their own jurisdiction.  This type of threshold jurisdictional determination, which must be made in each case based on its own facts, is precisely what the Supreme Court did in *Ex parte Milligan, 71* U.S. 2 (1866). In discussing the authority of the courts to address

---

[1] "Petitioners' motions seek relief that is contrary both to the law of the Circuit that these cases should be dismissed for want of jurisdiction, and to the clear intent of Congress, expressed in the MCA, to withdraw District Court jurisdiction over the detainees' habeas cases."  Motion to Dismiss at 1.

Milligan's claims that a writ of habeas corpus should issue notwithstanding action that suspended the writ, the Supreme Court stated:

> The suspension of the privilege of the writ of habeas corpus does not suspend the writ itself. The writ issues as a matter of course; and on the return made to it the court decides whether the party applying is denied the right of proceeding any further with it.

71 U. S. at 131. The Court then went on to consider whether the facts showed "that Milligan was a prisoner of war, and, therefore, excluded from the privileges of the statute." *Id.* The Court concluded that Milligan was not a prisoner of war and not covered by the suspension statute; therefore, the Court granted the writ. *Id.* Similarly, *in Duncan v. Kahanamoku,* 327 U.S. 304 (1946), the Court took jurisdiction and determined that the petitioner did not fall within the class of people to whom the Hawaiian martial law declaration applied. *See also United States v. Villato,* 2 U.S. (Dail.) 370 (C.C. D. Pa. 1797) (where prisoner had not been naturalized, writ granted to free him from treason charge). Nothing precludes this Court from conducting its own investigation into the jurisdictional issues involved in Petitioners' claims.

**II.   The Court Has the Discretion to Issue a Stay-and-Abey Order, and Such an Order Is Mandated Where a Procedural Bar May Prevent Future Habeas Review.**

Staying this action is consistent with Supreme Court directives in the analogous situation when a federal court is presented with unexhausted habeas claims under 28 U.S.C. § 2254.  In *Rhines v. Weber*[2], the Supreme Court explicitly approved the stay-and-abey procedure requested here by Petitioners in the context of federal habeas corpus proceedings.  The Court held that district courts have the discretion to issue stay-and-abey orders in lieu of dismissal where alternate remedies have yet to be explored in certain habeas actions.  Moreover, where there is i) just cause, ii) no intent to delay on the part of the petitioners, and iii) a

---

[2] *Rhines v. Weber*, 544 U.S. 269 (2005)

likelihood of success, it would be an abuse of discretion for the court *not* to issue a stay-and-abey order. The District Court has authority to enter a stay-and-abey order to safeguard habeas rights during the period of exhaustion, and such an order is mandatory in the absence of frivolous claims and intentional delay. *Rhines v. Weber*, 544 U.S. 269, 274 (2005).

Permitting Petitioner Mohammed Mosa Yaakoobi to present his post-exhaustion facts and claims to this Court is logical, fair, and compelled by governing Supreme Court authority. The petitioner has made substantial claims that his particular claims are viable and that, if necessary, he should be able to make a record for potential appellate and Supreme Court review. The petitioner has also clearly shown that there is just cause, no intent to delay and a likelihood of success in his Motion for Stay-and-Abey Order.

The Department of Justice ("DOJ") has taken the harsh position that they refuse to process, let alone grant, security clearances unless counsel agrees to the government's proposed Protective Order in the Circuit Court.[3] The government's proposed order is so restrictive as to constitute a denial of meaningful access to counsel. In this case, a protective order has never been issued, making the DOJ's refusal to grant security clearances even more harmful.

The Petitioner has been imprisoned in Guantanamo Bay for more than four years with no access to counsel. The Petitioner cannot send or receive communications from his attorneys. Sadly, Petitioner has not had the opportunity to have any meaningful communication with his family in Afghanistan, including his child, in all this time. Due to the absence of a protective order, counsel has been effectively prohibited from having a functioning attorney-client relationship with Petitioner. Unable to speak English and illiterate in all languages, the Petitioner has had no opportunity to review and rebut the classified information that conceivably

---

[3] Andrew Warden, trial attorney for the U.S. Department of Justice, confirmed in a telephone call with Petitioner's counsel on April 20, 2007 that security clearances are not available unless counsel agrees to the government's proposed protective order on an interim basis.

justifies his ongoing detention. The unclassified and undated transcripts of a Combatant Status Review Tribunal ("CSRT") and Annual Review Board ("ARB") are available at http://www.dod.mil/pubs/foi/detainees/csrt/index.html and contain exculpatory information, making clear that he is not an "enemy combatant." Department of Defense, CSRT and ARB Documents, http://www.dod.mil/pubs/foi/detainees/csrt/index.html (last visited April 9, 2007). The Petitioner's illiteracy and lack of counsel has made it nearly impossible for him to adjudicate his rights however.

The development of the necessary facts and the need for client consultation are basic to the attorney-client relationship. Under the ethical rules, the client must have the opportunity to advise the attorney of relevant facts, to provide direction in the litigation, and to participate in tactical and strategic decisions. To accomplish these ethical obligations under the circumstances of Guantanamo detention has been a challenge. Any disruption of the status quo would severely injure the petitioner's ability to litigate the DTA proceedings and defend himself. The motion to dismiss should be denied.

**III.    This Court Retains Subject-Matter Jurisdiction Over The Habeas Corpus Petition As Long As The Petitioners' Claims Are Not Frivolous And Have Not Been Decided On The Merits By The Supreme Court.**

The government places primary reliance on *Steel Co.* for the unremarkable proposition that jurisdiction is a threshold question (Motion to Dismiss at 4). The government ignores the preceding language in *Steel Co.* that supports this Court's jurisdiction to maintain the habeas action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court. *Steel Co.*, 523 U.S. at 89.

The starting point of *Steel Co.* is that the District Court has subject matter jurisdiction as long as there is a non-frivolous argument that the laws and Constitution support the claim:

> [T]he district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.' . . . unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'

523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)). As demonstrated by the dissenting opinions at both the Circuit Court level and on the denial of certiorari in *Boumediene*, there is a reading of the Constitution and laws of the United States that would sustain Yaakoobi's habeas corpus petition. 476 F.3d at 994-1012 (Rogers, J., dissenting); 127 S.Ct. at 1479-81 (Breyer, Souter & Ginsburg, JJ., dissenting from denial of certiorari).

The *Steel Co.* opinion also establishes that a Circuit Court opinion, such as *Boumediene*, is not sufficient to deprive the Court of subject-matter jurisdiction. Only when the Supreme Court rules adversely on the merits is dismissal for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co.*, 523 U.S. at 89 (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)(emphasis added)). The *Boumediene* denial of certiorari is emphatically not a ruling on the merits.

The jurisdictional issues are obviously not frivolous because the courts have been split on the constitutional issues at each level of the litigation: the District Court's split, leading to the two-to-one *Boumediene* opinion, resulting in the three-way fracture in the *Boumediene* denial of certiorari. Seldom has this Country faced weightier issues about the meaning of our Constitution. The main case upon which the government relies establishes that the motion to dismiss should be denied while remedies are exhausted.

Ironically, the government's own Motion recognizes this Court's continuing jurisdiction while the merits are exhausted, litigated, and appealed. In footnote 15, the government points out that the Protective Order should survive dismissal, citing to a case upon which the petitioner relies – *United Mine Workers* (Motion at 8-9). As argued *infra* at 14-16, *United Mine Workers* establishes that the District Court has the authority throughout the litigation to maintain the status quo by enforcing the protective order and otherwise ensuring that "the office and purposes of the writ of habeas corpus are not compromised," as Justices Stevens and Kennedy put it in *Boumediene*.

The Petitioner is particularly vulnerable to injustice due to the fact that a protective order has not been issued as of yet in his case. In addition, the DOJ's refusal to grant security clearance unless detainees agree to a protective order that is so restrictive as to deny any meaningful access to counsel argues in favor of not granting the motion to dismiss to preserve all remedies available to the petitioner. While the efficacy of the DTA process is being determined, it is premature for this Court to determine the dispositive questions. Meanwhile, this Court should follow the stay-and-abey norm established in *Rhines*, then, if the case is not mooted by the DTA proceedings, provide the petitioner the opportunity to make his record, to present his claims, and to receive a decision based on the facts and law of his individual case.

The government's position is based on a fundamental misunderstanding of what it means for a court to have jurisdiction. "Jurisdiction is a word of many, too many, meanings." *Steel Co.*, 523 U.S. at 90 (quoting *United States v. Vanness*, 85 F.3d 661, 663 n. 2 (D.C. Cir. 1996)). While the *Boumediene* opinion states the current law of the Circuit, the ruling does nothing to impair Yaakoobi's rights to exhaust his remedies while this Court preserves the status quo.[4] If

---

[4] The government erroneously cites to *Ayuda v. Thornburg*, 919 F.2d 153 (D.C.Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the circuit, depriving the courts of the

necessary, after exhaustion, this Court, the Circuit Court, and the Supreme Court have jurisdiction to determine the substantial issues raised by the petitioner without prejudgment based on a Circuit Court ruling that does not address Yaakoobi's specific factual and legal claims.

**IV.   The *Boumediene* Case Establishes That The Present Case Involves Substantial Issues That Have Not Been Decided By The Supreme Court And That The Exhaustion Of Available Remedies Should Precede A Decision On The Merits.**

The government attempts to stretch the Circuit Court's *Boumediene* decision far beyond its reach. Despite the initial jurisdiction found in *Rasul*, a split panel of this Court found that post-*Rasul* statutes deprived the courts of jurisdiction over petitions involving aliens detained at Guantánamo. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Only because the petitioners in those cases had declined to seek review directly with the Circuit Court under the Detainee Treatment Act of 2005, the Court found that the "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction. *Boumediene*, 476 F.3d at 994. The petitioners filed for a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a two-Justice statement respecting the denial of certiorari. *Boumediene v. Bush*, 127 S.Ct. 1478 (2007).

The statement of Justices Stevens and Kennedy found that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time." *Id*. The Justices specifically expressed concern regarding maintenance of the status quo during the

---

power to stay and hold in abeyance. In fact, the majority ruled in *Ayuda* that a stay was appropriate. The government cited a concurring opinion only, and, in that opinion, the concurring Judge ultimately agreed with the majority, which rejected the proposition that the court lacked power to enter a stay. *See Ayuda*, 919 F.2d at 153. The other concurring and dissenting opinion correctly articulated the applicable law that, until the Supreme Court speaks on jurisdiction, the District Court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo." *Ayuda*, 919 F.3d at 155-56 (Wald, C.J., concurring and dissenting).

litigation: "Were the government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" *Id.* (quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of certiorari)).

The government's reliance on *Boumediene* is misplaced for several reasons. First, the Circuit Court's reference to the *Boumediene* petitioners' decision not to exhaust, coupled with Justice Stevens and Kennedy's explicit adoption of the exhaustion model based on *Ex parte Hawk*, 321 U.S. 114 (1944), support continuing the stay while the DTA remedy is exhausted. *Id*. Second, the jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S.Ct. at 1478 (Stevens & Kennedy, JJ., statement regarding denial of certiorari)(citing *Rasul*, 542 U.S. at 480-81). Third, Justice Stevens and Kennedy's citation to Supreme Court authority regarding the efficacy of the alternative remedies contemplates an underlying habeas corpus case in which the petitioner can present such arguments to the District Court and, if necessary, the Circuit Court and Supreme Court.

> A. **Justices Stevens and Kennedy Explicitly And The Circuit Court Implicitly Adopted The Exhaustion Of Remedies Model For Habeas Relief.**

*Boumediene* does not control this case because, unlike the petitioners in that case, Yaakoobi will be exhausting his remedies under the DTA. The Circuit Court opinion expressly predicated its dismissal order on the petitioners' failure to utilize available remedies under the DTA. *Boumediene*, 476 F.3d at 994. Justices Stevens and Kennedy explained that "[d]espite the obvious importance of the issues," the Court was denying certiorari "at this time" in light of the

Court's practice of requiring exhaustion of available remedies, citing *Ex parte Hawk*. *Boumediene*, 127 S.Ct. at 1478.

The citation to *Hawk* is telling. In that case, the petitioner filed for federal habeas corpus relief under circumstances, as in the present case, in which the effectiveness of other remedies had not been established. The Supreme Court not only applied the exhaustion rule but held that the adequacy of the available remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated . . . . But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy . . . or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate . . . , a federal court should entertain his petition for habeas corpus, else he would be remediless. In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted). The exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will first be considered and decided in the District Court. The ultimate issues would then be preserved for appellate and Supreme Court review, if necessary.

### B. The Supreme Court Has Not Decided Any Questions Regarding The Jurisdiction Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus Proceedings.

The government's claims regarding *Boumediene* ignore the simple reality that "as always, denial of certiorari does not constitute an expression of any opinion on the merits." 127 S.Ct. at 1478. Three dissenting Justices and Circuit Judge Rogers in dissent explained that the constitutional ramifications of a statute that purports to disenfranchise petitioners in existing habeas corpus petitions are profound and of obvious importance. *Boumediene*, 476 F.3d at 994-

1012; 127 S.Ct. at 1479-81. The addition of Justices Stevens and Kennedy's statement confirms that Yaakoobi's petition should be fully considered, after exhaustion, upon his unique facts and legal arguments. The *Boumediene* case does not finally resolve the jurisdictional questions in Yaakoobi's case.[5]

  **C.** **The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved Until The Adequacy Of The DTA Remedy Becomes Known.**

Questions regarding the suspension and elimination of the writ of habeas corpus require consideration of whether alternative remedies provide protection coextensive with the Great Writ. *Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus."). The *Boumediene* statement on certiorari clearly sets out, with citation to *Marino v. Ragen*, 332 U.S. 561 (1947), that, if the DTA remedy is "inadequate", the Court is prepared to address the merits of the habeas corpus claims. Further, the Court stated that, in the interim, the government should take no additional steps "to prejudice the position of petitioners" in seeking review. *Id*. By maintaining the present case in the District Court, this Court is in a position to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." *Id*. The DOJ's overly restrictive scheme regarding security clearance applications is a clear indication that habeas corpus rights are in jeopardy.

The exhaustion model from the *Boumediene* litigation requires that the District Court proceeding remain in place for potential post-exhaustion litigation.

**V.** **Under *United Mine Workers*, The Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated.**

---

[5] The *Boumediene* case does not even finally decide the questions for the *Boumediene* petitioners, given that the mandate has not issued and the cases are still subject to motions and briefing.

In the statement accompanying the *Boumediene* order, two Justices stated: "Were the government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 127 S.Ct. at 1478. The Justices' language echoes the long-established principle that, even if there is no jurisdiction, that ultimate question is for the Supreme Court, and that while the matter is under consideration, the courts have "authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition." *United Mine Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)). The Circuit Court of the District of Columbia has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . . ." Clearly there was "power to preserve existing conditions while . . . determining (the) authority to grant injunctive relief."

*In re President and Directors of Georgetown College*, 331 F.2d at 1005 (internal citations omitted) (quoting *Shipp* and *United Mine Workers*).

The denial of certiorari in *Boumediene* leaves unanswered predicate questions necessary to deciding issues in Petitioner's case including: Does the DTA provide a forum for resolving issues regarding unlawful detention coextensive with traditional habeas corpus? If not, has the writ been unconstitutionally suspended or eliminated? Is the government taking "additional steps to prejudice the position of petitioners in seeking review of this Court" and, if so, should this Court "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised?"

The Respondent's motion to dismiss should be denied because this Court has insufficient information to answer a number of questions the DTA proceedings will answer. Further, if this Court eventually reaches the jurisdictional and constitutional questions, and rules adversely to the petitioner, there must be an adequate record for the Circuit Court's appellate review and, if necessary, for the Supreme Court to decide whether to grant a writ of certiorari, all of which requires that the petition in this Court remain in place until after the petitioner has exhausted the DTA procedures. During that process, the government should be foreclosed from prejudicing the petitioner's ability to litigate these questions – at both the District Court and Circuit Court level.

## VI. *Boumediene* Does Not Establish The Record To Which Yaakoobi Should Be Bound Because He Is Exhausting Available Remedies And Other Legal Theories May Be Available On The Particular Facts Of His Case.

The government's request for dismissal fails to recognize Yaakoobi's unique arguments, underlying facts, and resulting legal issues. The *Boumediene* cases involve specific allegations and legal theories; those cases do not control all the potential issues to be raised by the petitioners. *Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved). The most basic distinction between this case and *Boumediene* is that the scope and efficacy of the DTA remedy is being tested and will provide this Court necessary information that will only be known once the exhaustion of remedies is completed. Until then, the factual predicate for evaluating the legal issues is lacking, rendering the cases unripe for the fully developed review anticipated by Justices Kennedy and Stevens.

The DTA litigation, in addition to providing insight whether the DTA is an adequate alternative to habeas corpus, will also provide the opportunity to determine this Court's role in the DTA exhaustion process. Besides providing the procedural context for the litigation, Yaakoobi's DTA petition will include alternative requests for remand to this Court to resolve controverted facts, remand to this Court to address initial jurisdiction questions in the first instance, and remand to this Court based on the inadequacy of the DTA procedure for factual development and equitable relief commensurate with habeas corpus. For the Circuit Court to exercise these options, the present habeas cases must be stayed and held in abeyance.

The post-exhaustion litigation, if not mooted by relief granted under the DTA, will involve legal approaches that the *Boumediene* majority did not address and resolve. If *Rasul* means anything, the constitutional validity of the DTA statute must be determined in light of the post-DTA litigation and address Yaakoobi's unique claims.

## **CONCLUSION**

Petitioners' habeas corpus rights are far from finally decided: the Supreme Court has yet to speak on the merits as to the effect of the DTA and MCA, and Petitioners have not had their individual facts and legal arguments heard. Under governing Supreme Court precedent, the status quo should be preserved while the cases are litigated: under *United Mine Workers*, the Court has "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition." Under *Rhines*, the mechanism for permitting exhaustion of remedies without prejudice to habeas corpus rights is to stay this action and hold it in abeyance for a reasonable time for the DTA actions to be litigated.

For the foregoing reasons, this Court should deny Respondent's motion to dismiss, pending Petitioners' exhaustion of their DTA remedies in the Court of Appeals, and hold this action in abeyance pending Petitioners' exhaustion of those remedies and resolution by the Supreme Court of the jurisdictional issue in *Hamdan* or *Ali* of whether the MCA constitutionally stripped Guantanamo prisoners of their habeas rights, or resolution by the Supreme Court of a renewed petition for certiorari seeking review of *Boumediene*.

Dated:  May 3, 2007

/s/ Deming E. Sherman
/s/ Patricia A. Sullivan
Deming E. Sherman (#1138)
Patricia A. Sullivan (#2120)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
Tel: (401) 274-9200
Fax: (401) 276-6625

and

Jared A. Goldstein
ROGER WILLIAMS UNIVERSITY
 SCHOOL OF LAW
Ten Metacom Avenue
Bristol, RI  02809
Tel: (401) 254-4594

Michael Ratner
Shayana Kadidal
J. Wells Dixon
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6464
Fax: (212) 614-6499

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3 day of May, 2007, a true copy of the foregoing document was served upon each attorney of record listed below by electronic filing, via ECF, of this document with the United States District Court for the District of Columbia:

| | |
|---|---|
| Judry L. Subar | Email:  judry.subar@usdoj.gov |
| Terry M. Henry | Email:  terry.henry@usdoj.gov |

*Attorneys for Respondents*

/s/ Patricia A. Sullivan

_____

Patricia A. Sullivan


/s/ Deming E. Sherman

_____

Deming E. Sherman

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MOHAMMED MOSA YAAKOOBI (a/k/a Mohammed Mosa Yakoobi, Mohammed Yacoub), *et al.*, | : : : : : | |
| *Petitioners,* | : | |
| v. | : : | |
| GEORGE W. BUSH, *et al.* | : : : | Civil Action No. 06-cv-01683-RWR |
| *Respondents.* | : | |

## **PROPOSED ORDER**

Upon consideration of Petitioners' Opposition to Respondents' Motion to Dismiss, it is ORDERED that (1) the Respondents' Motion to Dismiss the habeas actions of Petitioner Mohammed Mosa Yaakoobi is denied, and (2) that these actions be held in abeyance pending Petitioners' exhaustion of their remedies in the Court of Appeals under the Detainee Treatment Act of 2005 and the filing in the Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*, or the Supreme court's resolution of the same jurisdictional issue as presented in a pending petition for certiorari in *Hamdan v. Rumsfeld.*

IT IS SO ORDERED.

DATED:

_____
RICHARD W. ROBERTS
United States District Court Judge